SUMNER E. CLAGGETT AND CHARLES F. CHICKERING, AS ADMINISTRATORS, ETC., RESPONDENTS, *v.* METROPOLITAN NATIONAL BANK, APPELLANT.

*National bank — bound to pay the currency bank bills of its predecessor, the State bank.*

After a banking association, organized under the laws of the State of New York, has been converted into a national banking association under the provisions of the act, chapter 97 of the Laws of 1865, the act, chapter 236 of the Laws of 1859, ceases to be applicable thereto.

It was not the intention of the legislature that the two proceedings, one relating to the national organization and the other to the retirement of its notes by the bank whilst continuing to be a State corporation, should go on *pari passu.*

APPEAL by the defendant, the Metropolitan National Bank, from a judgment, entered in the office of the clerk of the county of New York on the 22d day of December, 1888, in favor of the plaintiffs, for the sum of $14,627.83.

The action was brought to recover the amount of certain notes or bills which had been issued by "The Metropolitan Bank," a moneyed corporation organized under the laws of the State of New York.

The complaint alleged that on the 14th day of March, 1865, the said Metropolitan Bank, under and in pursuance of the act of congress of the United States, entitled "An act to provide a national currency secured by a pledge of United States bonds, and to provide for the circulation and redemption thereof," approved

June 3, 1864; and also the provision of an act of the legislature of the State of New York, entitled "An act enabling the banks of this State to become associations for the purpose of banking under the laws of the United States," and under resolutions and actions of its board of directors and its stockholders, passed March 9, 1865, the bank, at the time of the commencement of this action, was an association for carrying on the business of banking under the laws of the United States, under and by the corporate name of the Metropolitan National Bank.

The question presented by this appeal was, whether the Metropolitan National Bank, having received and divided among its stockholders the assets of the Metropolitan Bank, some twenty years prior to the bringing of this action, was obligated to redeem the currency banking bills of the Metropolitan Bank.

*Fisher A. Baker*, for the appellant.

*Leslie W. Russell* and *Welton C. Percy*, for the respondent.

BRADY, J.:

The defendant while a banking association under the laws of this State, and in 1865, having become a national banking association under the provisions of the act passed in that year (chap. 97), and desiring to retire its circulating notes issued whilst a State bank, proceeded to comply with the provisions of the act of 1859 (chap. 236) relating thereto. In its conversion to a national bank, and in the proceedings under the act last mentioned to retire its notes, every requirement was observed, and the question presented, therefore, *in limine*, is whether the act of 1859, the conversion having taking place, is applicable?

The learned justice in the court below held, that it was not for the reason that the act of 1859 applied only to banks having an intention to close their business absolutely, and not to those intending to continue under any other form. It may not be necessary to add to the views expressed by the learned justice in the court below sustaining this proposition, but, nevertheless, a few observations will be indulged in.

It is true that, by section 1 of the act of 1865, it is declared that its provisions shall be taken and deemed as an amendment of the

laws of this State in reference to the banking business, and, there-fore, they were engrafted on those laws. And for this reason, if no other exists, it must be conceded that whether it was the intention of the legislature to provide that the two proceedings should go on *pari passu*, that is, the national organization and the retirement of its notes by the bank, whilst a State corporation, is a difficult and troublesome question.

The act of 1865, it must be observed, will be read in vain to dis-cover any language, except by remote implication, which tends to express such a design. In the act of 1859, however, we find not only language indicating the expressed purpose of the statute to be to facilitate existing State banks to retire their circulation, but lan-guage from which that purpose, and that purpose only, is declared and quite manifest. It provides, among other things, that there shall be a publication in the State paper by the superintendent of banking that the bank notes will be redeemed by him, and must be presented within six years from the date of the notice, and that upon the expiration of such six years (all proceedings being regular) it shall be lawful for the superintendent to surrender to the banking association, and it shall be entitled to receive from him all the money remaining in his hands after such redemption, except so much as may be necessary to pay the reasonable expenses chargeable against the accounts, including the publication of the required notices. The money so to be refunded is whatever remains of the amount required to be deposited in order to fully meet the outstand-ing circulation at the time the proceeding is initiated, whatever that may be.

By section 5 it is further provided that a banking association, after the payment of all the circulating notes issued by it, which shall have been presented within the time required by the notice to be published, as already stated, and of all other lawful claims and demands against the bank, shall divide the remaining property and effects of the bank among the stockholders thereof or their personal representatives according to their respective shares and interests therein.

It will at once be perceived that if the bank continues in another form, all its assets being transferred to the new formation by opera-tion of the statute, the division contemplated by the section cannot

be made; and in that respect, at least, the object and design of the act is frustrated. A provision of this kind would, by implication, if there were no express language leading to such a result, determine the character of the statute, and its purpose. It seems to be a necessary corollary, if the distribution is to take place of any surplus, that the absolute death of the corporation is not only contemplated, but indispensable in order to carry out the provisions of the statute.

For these reasons, in addition to those assigned by the learned justice in the court below, it is thought that the judgment is correct, and should be affirmed, with costs.

Van Brunt, P. J., concurred; Bartlett, J., concurred in the result.

Judgment affirmed, with costs.